337 F.Supp. 308 (1971)
John M. BURCH, Plaintiff,
v.
INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, Defendants.
Civ. No. 70-1780.
United States District Court, S. D. Florida, Miami Division.
February 1, 1971.
Final Decree Filed February 3, 1971.
*309 *310 Kelly, Black, Black & Kenny, Miami, Fla., for plaintiff.
Plato E. Papps, Washington, D. C., and Manners & Amoon, Miami, Fla., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE
MEHRTENS, District Judge.
This cause, came on for final hearing on January 20, 1971, and the Court having considered testimony of the witnesses, the exhibits, argument of counsel, the pleadings, the matter presented at the hearing on the prayer for preliminary injunction and the memoranda submitted by counsel, makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. The Plaintiff, JOHN M. BURCH, (hereinafter referred to as "Burch"), is a member in good standing of the Defendant, International Association of Machinists and Aerospace Workers, AFL-CIO, (hereinafter referred to as "IAMAW"), of District Lodge 145 of the IAMAW and of Local Lodge 368 of the IAMAW. Plaintiff, Burch, is qualified under the internal law of the IAMAW and District Lodge No. 145 to offer himself for and serve in the post of President and General Chairman of District Lodge No. 145. At the trial Richard Monroe of Local Lodge 1726 in Boston, Massachusetts and Jack Kaminsky of Local Lodge 2198 in Houston, Texas, orally moved to intervene as plaintiffs, and the Court reserved ruling. The Court hereby grants said motions.
2. In early September of 1970, the Plaintiff, John M. Burch, announced his candidacy for President and General Chairman of District Lodge No. 145. District Lodge No. 145 is a subordinate Lodge of the IAMAW comprised in the main of National Airlines employees at the various points in the National Airlines system around the country. The job of President and General Chairman of District 145 is the highest office in District 145. There are twelve local lodges in District No. 145 that participate in its elections. District 145 elections are held every four years. In order to run for election under District No. 145's by-laws as a District Officer, a member must first seek endorsements or nominations of the local Lodges in the District. The two aspirants for a particular District post who receive the most Local Lodge nominations or endorsements then run against each other in a District-wide referendum election, unless more than two aspirants all receive the same number of nominations or endorsements, in which case all run against each other in the District-wide referendum election. Only members of District 145 are entitled to vote in Local Lodge nomination elections or the District referendum elections.
3. As more fully set forth in the Findings and Conclusions in 337 F.Supp. 303, the IAMAW had discriminatorily "lapsed" John Burch's membership for non-payment of dues and removed him as President and General Chairman of District No. 145. In order to do so, the IAMAW had to threaten to place District Lodge No. 145 under Trusteeship to obtain the consent of the District Lodge No. 145 officers to his removal.
4. Early in September, 1970, the District Lodge mailed to the secretaries of the twelve locals nomination slips, instructions and return envelopes addressed to the District. Plaintiff Burch, *311 one Wilbur Spurlock and one Constantine Ballas began to travel about the system seeking nominations. Local 2198 is located in Houston, Texas, (hereinafter referred to as the "Houston Local"), and is comprised in the main of employees of Trans Texas Airlines who were not concerned with the District 145 elections. There are approximately 350 people in the Houston Local, and only eight of them are District 145 members. The Secretary of the Houston Local sent the nomination packet he received from District 145 to the National Airlines Union Steward in Houston who then on September 18, 1970, conducted a straw poll on the premises of National Airlines and returned the nomination packet and the results to the Secretary. Seven voted for John Burch for President and General Chairman and one voted for Wilbur Spurlock. The Secretary then placed John Burch's name in the space for nominee as President and General Chairman on the form sent him by the District, stuffed the form into the return envelope furnished by the District and mailed the envelope on September 30, 1970. The envelope, postmarked September 30, 1970, reached the District office on October 1, 1970. The IAMAW knew upon receipt of the envelope that Article IX, Section 5 of the by-laws provided that "at a regular meeting in the month of October ... local lodges shall have the right to make one (1) nomination each for the offices of President ..."; that the envelope contained the Houston Local's nominations; that those nominations could not have been made at a regular meeting in the month of October; and that the Houston Local was not aware that it had made a technical error in the nominations. The IAMAW also knew that Union Steward Jack Kaminsky had testified for and otherwise supported Plaintiff Burch in his litigation with the IAMAW. Ample time existed to cure any error as to the time and place of the making of the nomination between the date the IAMAW became aware of the error and November 5, 1970, the date fixed for opening the envelopes and counting the nominations for the candidates. The IAMAW, however, allowed the Houston Local to continue in the belief that its nominations were proper, sufficient and would be counted.
5. Mr. Burch and his supporters in Local Lodge 1726 in Boston, Massachusetts, were denied with the approval of the IAMAW equal rights and privileges to nominate candidates for Local 1726's endorsee for President and General Chairman of District Lodge 145. On October 13, 1970, Plaintiff Burch went to the regular monthly meeting of Local Lodge 1726 in Boston, Massachusetts, with four supporters who planned to submit Plaintiff Burch's name as Local Lodge 1726's nominee for President and General Chairman of District Lodge No. 145 and support Plaintiff Burch as said nominee at the meeting. There are twelve National employees in Local Lodge 1726, and Plaintiff Burch had determined in a straw poll that all but three of these supported his candidacy. Those three supported Constantine Ballas and appeared at the meeting with him. Seven National employees in all attended the Local Lodge 1726 meeting on October 13, 1970. Local Lodge 1726 is comprised in the main of Northeast Airlines employees. Approximately 50 members attended the meeting. The meeting was chaired by the President of the Local who is a Northeast Airlines employee. After the meeting was opened, the regular order of business was suspended to select the District 145 nominees for the Local. Both Burch and his supporters, and Ballas and his supporters were in plain view of the President of the Local. The President knew that Mr. Ballas and his supporters were there to offer Mr. Ballas as a candidate for the Local's nomination as President and General Chairman of the District Lodge No. 145 and that Mr. Burch and his supporters were there to offer Mr. Burch as a candidate for the Local's nomination as President and General Chairman. One of Mr. Ballas' supporters, Leon Pickowitz, offered Mr. *312 Ballas for President and General Chairman. One of Mr. Burch's supporters, Bob Conway, then sought recognition by raising his hand to offer Mr. Burch as President and General Chairman. The Chair ignored him and the Chair asked for further nominations, tapped the gavel three times saying "once, twice, three times hearing no further nominations, nominations closed." The Chair then announced that the nominations were open for Vice-President. Mr. Pickowitz nominated a candidate for Vice-President. The Chair then for the first time recognized Mr. Conway, who was still sitting in the same place with his hand sticking up. Mr. Conway attempted to place Mr. Burch's name in nomination for President and General Chairman, but the Chair refused to permit him to do so on the ground that the nominations for President and General Chairman had been closed. When Mr. Conway persisted, the President then of his own choosing submitted to the entire group (consisting mainly of Northeast Airlines employees) the question of whether he had properly closed the nominations. The majority of the entire group voted that he had properly closed the nominations, but a majority of the National Airlines employees (the only members concerned with the election) voted that he had not. The Chair never considered re-opening the nominations and never placed the question of reopening the nominations before either the entire body or the National Airlines employees. Mr. Conway definitely was not given a chance to nominate equal with that afforded to Mr. Pickowitz. The Chair acted in bad faith in denying Mr. Conway and the other Burch supporters the right to nominate and vote for Burch as the Boston Local's nominee for President and General Chairman. Mr. Sutherland, the General Chairman of the Northeast Airlines District Lodge, an IAMAW employee, witnessed all of this and refused to correct the matter when Burch protested to him. Burch and his supporters then left, and Ballas received the nomination of Local 1726. Burch and his supporters from the Boston Local protested to the IAMAW. The IAMAW investigated by sending a Grand Lodge representative to a subsequent meeting of the Boston Local Lodge. This representative spoke to no National Airlines employees; spent less than an hour in his investigation, and obtained the signatures of four Northeast Airlines employees to a form statement that the nominations "were held in the most fair and impartial manner ever". On the basis of this investigation, the IAMAW denied the protest. Burch and his supporters in the circumstances were subjected to discriminatorily strict parliamentary procedures which denied them an opportunity to nominate the candidate of their choice equal with that given Mr. Ballas and his supporters. Even if it were considered that the Chair in good faith failed to see Mr. Conway's hand sticking up prior to the time the nominations were closed, the parliamentary procedure employed by the Chair would be considered questionable in any circumstances. When considered as a whole, the meeting must be considered as a meeting of a very large body. "In very large bodies it is customary to make a motion to close nominations, but until a reasonable time has been given, this motion is not in order ... [Such motion] ... requires a two thirds vote as it deprives members of one of their rights....".
"If for any reason it is desired to reopen nominations, it may be done by majority vote". Robert's Rules of Order, Revised (Seventy-Fifth Anniversary Edition) Page 97.
Actually, questions in respect to he District 145 election should have been determined by the National employee members, not by the combined National and Northeast Airlines membership. If the question of cutting off the right to nominate Burch had been put only to the National members, the Chair obviously would have been over-ruled even on the improper question of whether the nominations had been properly closed.
*313 6. Burch and his supporters on October 14, 1970, by wire protested to the IAMAW the denial of their right to nominate Burch as the endorsee of the Boston Local. By letter dated October 15, 1970, Floyd E. Smith, President of the IAMAW, placed District Lodge No. 145 under his direction, supervision, and control, pursuant to Article VI, Section 5 of the Constitution of the IAMAW and appointed General Vice-President William Winpisinger Supervisor of District Lodge 145 and Grand Lodge Representative George Brown as Deputy Supervisor. This order suspended the autonomy otherwise available to District Lodge 145, among other things, suspending the authority of the officers of the District to expend the funds of the District without prior approval of the IAMAW. Article VI, Section 5 authorizes the International President to place subordinate bodies of the IAMAW under his supervision, direction and control only after the filing of charges against the officers of the District or the District itself, or "pending the filing of charges and the disposition thereof". Admittedly, no charges have been filed or are contemplated against the District or its officers. Article VI, Section 5, therefore, does not justify the action of International President, Floyd E. Smith, in formally placing District No. 145 under his direction, supervision and control. No other provision of the Constitution and by-laws of the IAMAW justifies such action. The action of the International President in placing the District Lodge under direction, supervision and control was not for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of the IAMAW. Any disability of President and General Chairman, Warren Watts, or any desire on his part to sacrifice the autonomy of District 145 so that he could continue on the payroll of the District without working, would not justify placing District 145 under direction, supervision and control.
7. On November 5, 1970, while the District was under the supervision, direction and control of the IAMAW, the nominations for officers of District 145 were tabulated by Mr. A. C. Carter under the supervision, direction and control of the Deputy Supervisor George Brown of the IAMAW. Deputy Brown instructed Mr. Carter to "go by the book" and to "dot every i and cross every t" in the tabulations. As a result, Mr. Carter threw out the ballot of the Houston Local saying "Local Lodge 2198 returns cannot be tabulated as the postmark on their return to the Secretary-Treasurer's Office was postmarked 9/30/70 and received by the Secretary-Treasurer 10/1/70, thereby indicating the vote of this Local Lodge was held in the month of September and is contrary to the District Lodge by-laws currently in effect". The returns of the Houston Local should have been counted and should not have been thrown out. Throwing out the returns of the Houston Local discriminated against the members of the Houston Local in their rights and privileges to nominate candidates for district offices and deprived them of rights and privileges equal to members of other Locals to nominate candidates for District Office. Throwing out the returns of the Houston Local also discriminated against Mr. Burch and his supporters and deprived them of rights equal to other candidates and their supporters to vote for the candidate of their choice. Those returns were thrown out only because of the "go by the book  dot every i and cross every t" policy instituted by the IAMAW especially for the purpose of this election. This "go-by-the-book" policy was not uniformly followed in the tabulation of November 5, 1970. The Jacksonville returns were tabulated on the basis of  in the words of Supervisor Winpisinger  a "flexible" policy. The mistake of the Houston Local was one of form and not of substance and, admittedly, the nomination fairly reflected the wishes of the *314 membership of the Local. The IAMAW could have by indicating to the Houston Local that its returns would be disqualified because of the mistake, rendered it possible for the Houston Local to cure the mistake, but, instead, sat back with knowledge of the mistake and the position the IAMAW would take as to its effect, and did nothing. The returns of the Houston Local would probably not have been thrown out if the District had not been under the direction, supervision and control of the IAMAW.
8. Counting the Boston Local for Ballas and not counting the Houston Local at all, Ballas received the nomination of 4 Locals, Spurlock the nomination of 4 Locals and Burch the nomination of 3 Locals. Both the Houston Local and the Boston Local were due to be counted for Burch so that, properly tabulated, the nomination returns should have been tabulated 5 for Burch, 4 for Spurlock and 3 for Ballas. Running new elections in the Houston Local and the Boston Local is unnecessary. The IAMAW does not deny that Burch is the clear choice of the National Airlines employees in both Locals; it contends only that the clear choice of the National employees in the Houston Local should be ignored because of failure to "go by the book" and that the clear choice of the National employees in the Boston Local should be ignored because the Northeast Airlines employees' President in the exercise of strict parliamentary procedure, prevented Burch's name from being offered. In this connection, it should be observed that the IAMAW failed to present in its behalf at the trial a single National Airlines employee of the Houston or Boston Locals. A referendum election is in order between Burch and Spurlock for the office of President and General Chairman.
9. The Plaintiffs have incurred an obligation to the firm of Kelly, Black, Black and Kenny, for their services herein. A reasonable fee is $2000.00. An award of attorneys fees is appropriate in this case.
10. The Plaintiffs have exhausted their remedies within the IAMAW.

CONCLUSIONS OF LAW
1. This Court has jurisdiction under Title 29, Sections 412 and 464(a) of the United States Code. The Department of Labor does not have exclusive jurisdiction. Depew et al. v. Edmiston et al., 386 F.2d 710 (C.A.3, Nov. 27, 1967); Schonfeld v. Raftery, 381 F.2d 446 (C.A.2, Aug. 10, 1967); Navarro v. Gannon, 385 F.2d 512, 2 Cir.
2. The imposition of supervision, direction and control over District 145 subjected District No. 145 to the imposition of a "Trusteeship" within the meaning of the definition of "Trusteeship" in Title 29, Section 402(h) of the United States Code.
3. In establishing the "Trusteeship" over District 145 as described in the Findings, the IAMAW violated Title 29, Section 462 of the United States Code.
4. In establishing the "Trusteeship" as described in the Findings, the IAMAW violated the rights of the members of District 145 under Title 29, Section 411(a) (1) and (2). Navarro v. Gannon, 385 F.2d 512 (C.C.A.2, 1967).
5. The conduct of the IAMAW as described in the Findings in refusing to count the nominations of the Houston Local and in condoning the conduct of the nomination for President and General Chairman in the Boston Local infringed the rights of the Plaintiffs to nominate and vote equally under Title 29, Section 411(a) (1).
6. There is no need under the circumstances of this case to exhaust internal union remedies. Schonfeld v. Raftery, supra, 381 F.2d at Page 448; Detroy v. American Guild of Variety Artists, 286 F.2d 75 (C.A.2, 1961).
7. Attorneys fees may be awarded in cases of this nature. Gartner v. Soloner, (C.A.P.1961), 384 F.2d 348, cert. denied, 390 U.S. 1040, 88 S.Ct. 1633, 20 L. Ed.2d 302; Retail Clerk's Union Local 648 v. Retail Clerk's International Assn., *315 D.C.D.C.1969, 299 F.Supp. 1012; Sands v. Abelli, D.C.N.Y.1068, 290 F.Supp. 677.
8. No orders are necessary in connection with the conduct of the coming elections in view of the Court's Order in Case No. 68-109-Civ-WM, returning John Burch to the office of President and General Chairman of District 145 and the Court's Order in this case eliminating the Trusteeship established by the IAMAW and returning the autonomy of the District.

FINAL DECREE
On the basis of the foregoing Findings and Conclusions, the Court
Orders, adjudges, and decrees as follows:
1. The supervision, direction and control imposed on District Lodge No. 145 by President Floyd E. Smith be, and the same is hereby terminated.
2. The Defendant, International Association of Machinists and Aerospace Workers, AFL-CIO, be, and hereby is enjoined and restrained from interfering with the autonomy available to District Lodges under the Constitution of said Association except as provided in Article VI, Section 5 of said Constitution, including without limitation, the right of District Lodge 145 to meet under the direction of its own officers without the presence and supervision of Grand Lodge officers to conduct its elections and otherwise direct its affairs without direction, supervision and control of Grand Lodge officers, and the right to expend its funds without the approval of Grand Lodge officers.
3. The Defendant, International Association of Machinists and Aerospace Workers, AFL-CIO, is hereby enjoined and restrained from conducting an election between Constantine Ballas and Wilbur Spurlock for President and General Chairman of District 145. Plaintiff, John M. Burch, is declared to be the nominee of Locals 2198 in Houston, Texas and Local 1726 in Boston, Massachusetts, for President and General Chairman of District 145, and the referendum election for President and General Chairman of District Lodge 145 shall be between John Burch and Wilbur Spurlock.
4. The International Association of Machinists and Aerospace Workers, AFL-CIO, shall pay to Kelly, Black, Black and Kenny, P.A., the sum of $2000.00 for which let execution issue.
5. Costs are taxed to the Defendant, International Association of Machinists and Aerospace Workers, ALF-CIO.