**Robert REICH, Secretary of Labor; United States Department of Labor,\* Plaintiffs–Appellees,**

**v.**

**LOCAL 89, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Defendant–Appellant.**

**No. 92–55762.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided Oct. 3, 1994.

---

\* Pursuant to Fed.R.App.P. 43(c)(1), Robert L. Reich is substituted for Lynn Martin, former Secretary of Labor.

Theodore T. Green, Washington, DC, Ray Van der Nat, Los Angeles, CA, Laurence E. Gold, Connerton Ray & Simon, Washington, DC, for defendant-appellant.

Michael E. Quinton, Asst. U.S. Atty., San Diego, CA, Daniel Teehan, Regional Sol., San Francisco, CA, James McQuade, U.S. Dept. of Labor, Washington, DC, for plaintiffs-appellees.

Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,** Senior District Judge.

WILL, Senior District Judge:

Lynn Martin, the then Secretary of Labor ("Secretary"), sued Local 89, Laborers' In-

** Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

ternational Union of North América ("Local 89") pursuant to section 402(b) of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 482(b). Pursuant to LMRDA § 401(e), 29 U.S.C. § 481(e), the Secretary challenged Local 89's June 1990 election of six of its officers, contending that Local 89 had failed to allow the nomination of certain members in good standing when nominations were reopened after previous nominees had been disqualified. The Secretary alleged that this violation affected the outcome of the election and sought a judgment declaring the election void. Local 89 filed a motion for summary judgment, which the district court denied. Subsequently, the Secretary filed a motion for summary judgment. The parties agreed that there were no genuine issues of material fact and that the case presented issues of law which the district court could decide on the basis of the record before it. The district court granted the Secretary's motion, ordered a new election for the offices of Recording Secretary, Executive Board Member, and Delegate under the supervision of the Secretary and further ruled that the Secretary did not have to defer to the renomination provisions set forth in Local 89's amended constitution. Local 89 appeals the district court's order.

We affirm the district court's order granting summary judgment and ordering a new election for the offices in question.

### BACKGROUND

In April 1990, prior to its local triennial election, Local 89 held a special meeting to nominate candidates for the election, in accordance with Article VI, Section 1 of the Laborers' Uniform Local Union Constitution. This special nomination meeting is the principal, and sometimes only, opportunity to nominate candidates for local union office. There was no limit on the number of nominations for any office at this meeting. Nominations for each office were closed when no further nominations for that office were made.

Nominations were made for President, Vice President, Recording Secretary, Secretary–Treasurer/Delegate, Business Manager/Delegate, Sergeant–at–Arms, three audi-

tors, two Executive Board Members and three Delegates to the Laborers' District Council. Robert Ross, a member of Local 89, did not attend this meeting and was not nominated for any office at the meeting. Despite his absence, Ross could have been nominated at that meeting had he been "excused for just cause by a vote of the membership." Ross, however, had not asked to be excused.

After the April meeting, Local 89's Judges of Election examined the qualifications of the nominees to determine if they were eligible to hold office. If the Judges had found all the nominated candidates qualified, no further nominations would have been permitted and only those nominees' names would have appeared on the election ballot. However, the Judges determined that six of the candidates for three offices were not qualified because they did not meet the constitutional requirements for eligibility. The disqualified candidates included one candidate for Recording Secretary, two of the four candidates for Executive Board Member, and three of the six candidates for Delegate to the District Council.

At the next regular membership meeting, held on May 18, 1990, union members were allowed to nominate new candidates to replace the disqualified candidates pursuant to Article VI, section 2(f) of the Laborers' Local Constitution. At that time, Article VI, section 2(f) stated:

> If the Judges of Election have disqualified any candidate, the Chairman of the meeting shall then call for further nomination for each office or position where disqualification occurs. If any such nominations are made, the Judges of Election shall immediately examine the new nominees and report on same at said meeting.

The International Union and its affiliates, including Local 89, have consistently interpreted this provision to limit the number of further nominations to the number of individuals disqualified for the particular office.

The incumbent president and candidate for re-election chaired the second meeting. He recognized only three union members and only those three members were allowed to nominate candidates for the six positions. At

that meeting, Joseph Hyatt nominated James McNelly to the position of Recording Secretary, Gerry Spredute nominated Joseph Hyatt and Henry Norbrok to the Executive Board, and Richard Scannel, already an incumbent candidate for both the Executive Board and delegate positions, nominated Joseph Hyatt, Henry Norbrok and James McNelly to the delegate positions. As a result, only three individuals were nominated to replace the six who had been disqualified.

When the number of additional nominations equal to the number of disqualifications was reached for each of the offices, the chairman closed the nominations, even though several other members still had their hands raised in order to nominate additional candidates. Several of these members wanted to nominate Ross. The election was held in June 1990. All of the candidates nominated at the first nomination meeting and found qualified by the Judges of Election and none nominated at the second meeting were elected.

Ross filed an internal union protest against the nominations at the second meeting. The General Executive Board conducted a hearing on his protest, which it denied, finding that Local 89 properly limited the further nominations to the number of candidates who had been disqualified, even though six candidates were disqualified and only three individuals were nominated to the six vacancies, none of whom was elected.

The Secretary filed this lawsuit on December 20, 1990. At its September 1991 convention, the Laborers' International Union amended Article VI, section 2(f) of the Local Constitution. Article VI, section 2(f) now reads as follows:

If the Judges of Election have disqualified any candidate, the Chairman of the meeting shall then call for further nominations if, but only if, the disqualification results in there being no candidate for that office or, in the case of Executive Board Members, in there being fewer candidates than there are positions to be elected, but limited to the number of those disqualified for that office. If this renomination process is declared unlawful, this subsection (f) will be rendered null and void and deleted from

this Constitution entirely. If any such nominations are made, the Judges of Election shall immediately examine the new nominees and report on same at said meeting.

## DISCUSSION

Our review of a district court's grant of summary judgment is *de novo*. *Saul v. United States*, 928 F.2d 829, 832 (9th Cir. 1991). Because there were no genuine issues of material fact presented to the district court, we need only decide whether the substantive law was properly applied. *United Food and Commercial Workers and Employers Arizona Health and Welfare Trust v. Pacyga*, 801 F.2d 1157, 1159 (9th Cir.1986). We have jurisdiction under 28 U.S.C. § 1291.

The "special function" of Title IV, of which § 401 is a part, "is to insure 'free and democratic' elections." *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 496, 88 S.Ct. 1743, 1746, 20 L.Ed.2d 763 (1968), quoting *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968). The goal is "to protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership.... Title IV, and particularly § 401, was the vehicle by which Congress expressed its policy." *Hotel Employees Union, Local 6*, 391 U.S. at 497–98, 88 S.Ct. at 1747. This goal is to be balanced against a "long-standing policy against unnecessary governmental intrusions into internal union affairs." *Id.* at 496, 88 S.Ct. at 1746.

A congressional compromise allows unions the freedom to run their own elections so long as those elections conform to the democratic principles written into § 401. *See id.* at 496–97, 88 S.Ct. at 1746–47. Thus, "although Congress emphatically gave unions the primary responsibility for enforcing compliance with the Act, Congress also settled enforcement authority on the Secretary of Labor to insure that serious violations would not go unremedied and the public interest go

unvindicated." *Id.* at 498–99, 88 S.Ct. at 1747–48.

In order to prevail in an enforcement action under § 401, the Secretary must prove by a preponderance of the evidence that a violation of that section occurred and that the violation may have affected the outcome of the election. 29 U.S.C. § 482(c). If a violation which may have affected the election's outcome is found, the district court is to declare the election void and order a new election under the supervision of the Secretary. *Id.* A district court order directing a new election "shall be appealable in the same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal." *Id.* § 482(d). In fact, an election supervised by the Secretary was held on July 8, 1992. Thus, on appeal, we limit our discussion to whether the district court's order granting summary judgment in favor of the Secretary and ordering a new election was proper.

A. *Local 89's Nomination Procedures Failed to Provide Its Members With a Reasonable Opportunity to Nominate Candidates, in Violation of LMRDA § 401(e).*

Local 89 argues that its nominating procedures did not violate § 401(e) because the second nomination meeting was legally gratuitous and, thus, any violations at that meeting did not affect the members' "reasonable opportunity" to nominate candidates since they were fully able to nominate candidates at the first meeting. Local 89 begins by emphasizing that the statute rests responsibility for self-governance in the unions, themselves, and that government interference in internal union affairs should be minimal, quoting *Brock v. Writers Guild of America, West, Inc.,* 762 F.2d 1349, 1355 (9th Cir.1985) ("[T]he reason for this concern [regarding government interference] was clear: Congress did not want the federal government (acting through the Secretary) to become excessively involved in union politics.").

█ Local 89 argues that the Secretary lacks statutory authority to challenge the second nomination meeting procedure. The union contends that because the second meeting gave members an additional opportunity to nominate candidates, it was not a restriction on nominations and actually provided more than the LMRDA requires. Consequently, the union argues, the Secretary does not have authority to seek judicial enforcement of "her opinion" just because the "union's additional nomination procedure—the *absence* of which would *not* violate the statute—did not go as far as the Secretary thought it should." Appellant's brief at 17.

In support, Local 89 relies on *Brock,* 762 F.2d at 1349, and *Ackley v. Western Conference of Teamsters,* 958 F.2d 1463 (9th Cir. 1992), but neither case is wholly persuasive. In *Brock,* the issue was whether the Secretary had authority to challenge a union's rule that allowed supervisors to run for union office. This Court examined the language of the statute, its legislative history, and applicable administrative regulations, and did not find any language granting the Secretary authority to determine eligibility requirements. Instead, this Court found the purpose of § 401(c) was to ensure adequate procedural safeguards. As such, substantive eligibility requirements were not contemplated when the statute was promulgated and the statute had not been interpreted to include substantive requirements.

The Court noted that under § 401(e), which establishes minimum guidelines for unions wishing to impose eligibility requirements, unions could prohibit supervisors from becoming candidates, but it did not follow that the Secretary could impose such a requirement under § 401(c). In conclusion, it stated, "[a]s we have noted, there is a significant difference between a voluntarily-enacted union eligibility requirement and a governmentally-imposed eligibility requirement. While the former furthers the attainment of the underlying Congressional goal of union self-government, the latter hinders it." *Id.* at 1358 (footnote omitted).

Clearly, *Brock* stands for the proposition that unions can impose liberal or stringent eligibility requirements without the Secretary's approval; however, critical differences exist between the issue presented in *Brock*

and the issue before us. *Brock* involved the Secretary's attempt to impose substantive restrictions on union activities where the applicable statute only authorized imposition of procedural safeguards and the legislative history of § 401(c) did not mention giving the Secretary the authority to impose eligibility requirements. Here, the disputed action involves procedural safeguards—the Secretary is in no way attempting to restrict substantively the union's activities. In fact, the Secretary seeks here to expand union procedural democracy. In addition, the legislative history of § 401(e) clearly allows the Secretary to step in if "free and democratic" elections are not being held, and the Secretary has explicit statutory authority to ensure that the unions provide a "reasonable opportunity" for members to nominate candidates. Finally, in the instant case, the parties apparently agree that, if the nomination procedures used during the second meeting had been used during the first, the Secretary would have had authority to remedy any violations. This is not a case where the Secretary could never have authority over the subject matter, as in *Brock*, but where the union claims the Secretary does not have authority only with respect to the second meeting because that meeting was "legally gratuitous."

Local 89's reliance on *Ackley* suffers from the same defect. In *Ackley*, a union member sued his union under LMRDA § 101(a) because the union failed to disclose material changes in a proposed renewal collective bargaining agreement before submitting it to the membership for a ratification vote. The plaintiff argued that § 101(a)(1), which guarantees union members the equal right to vote in an election, guaranteed members meaningful information about the contract. The court held that, although the LMRDA might require meaningful disclosure for elections required under the LMRDA, that right did not apply in the particular situation because the right to a ratification vote was provided by the union rules alone and was not required by the statute.

Local 89 contends that *Ackley* establishes the rule that permissive provisions of the union constitution, unlike LMRDA requirements, are not within the statutory purview of the Secretary. *Ackley,* however, involved a situation where the plaintiff brought a suit under a section of the LMRDA which simply did not cover the circumstances involved. The Secretary does not have authority to correct alleged abuses when the statute does not even address the particular abuses. In fact, this Court stated, "[i]f there is a remedy for the conduct [plaintiffs] complain of, *and there well may be,* it lies elsewhere." *Ackley,* 958 F.2d at 1473 (emphasis added).

Here, the Secretary clearly has statutory authority to investigate and remedy possible abuses of the *nomination and election procedures adopted by a union.* Therefore, the cases cited by Local 89 do not support its argument because in those cases the Secretary did not have authority to regulate the alleged wrongful conduct.

■ The Secretary responds to the alleged lack of statutory authority by claiming that, even though the first nomination meeting did allow a reasonable opportunity to nominate candidates, the validity of that meeting cannot mask or negate the violations that occurred during the second meeting. The Secretary contends that, once the second nomination procedures were undertaken, those procedures had to comply with the dictates of the LMRDA. The Secretary emphasizes that an "underlying concern of Congress was with fairness in elections so that the confidence of the public in the integrity of union elections would be preserved." Appellee's brief at 9, citing S.Rep. No. 187, 86th Cong., 1st Sess. 6–7, 20 (1959). The Secretary then argues that because Local 89's procedure allowed the incumbent candidate for president to determine who could nominate additional candidates, the procedure was inherently unfair because it in effect allowed the president, instead of the union membership, to choose who could run for office.

Both the Secretary and the district court rely on *Donovan v. CSEA Local Union 1000,* 761 F.2d 870 (2d Cir.1985), for the proposition that "[w]hen one procedure unduly restricts members' choice of candidates, less restrictive alternative procedures do not necessarily render the restrictive rule reasonable." Dist.Ct.Op. at 11. Just as *Brock* somewhat supports Local 89's position,

*CSEA Local Union 1000* provides support for the Secretary's position, but it, too, is not directly in point.

In *CSEA Local Union 1000*, the local required non-incumbent candidates to submit nomination requests to a nominating committee. To be nominated, the candidate had to receive a plurality vote of the committee. Candidates rejected by the committee could be placed on the ballot only if they filed petitions with the names of two percent of the membership within six weeks of the committee's rejection. The district court held that, although the committee process was clearly violative of the LMRDA, the nomination procedures taken as a whole were not because the additional petition procedure provided a reasonable opportunity to nominate candidates. The Second Circuit refused to adopt this line of reasoning and reversed the district court, holding that the petition availability did not save the nomination procedure.

The Secretary contends that the court in *CSEA Local 1000* "rejected the notion that a two-part nominating procedure, taken as a whole, can cure the infirmities of one, or both, of the parts taken alone." Appellee's brief at 13. The Secretary urges us likewise to reject Local 89's similar argument that because one part of the nomination process was valid, no violation occurred. The facts in *CSEA Local 1000*, however, are significantly different. In *CSEA Local 1000*, the primary issue was interpreting that portion of § 401(e) requiring union qualifications to be uniformly imposed. Because union qualifications were not uniformly imposed, the entire nomination process failed to meet the requirements of § 401(e). In that case, the court held that union members did not have even one fair opportunity to nominate candidates, while in this case the members concededly did have at least one such opportunity.

---

1. Local 89 distinguishes *Burch* on this ground, but the union itself relies on *Ackley*, which involved a violation of § 101(a)(1) as well.

2. Local 89 also relies on cases concerning public elections to support the procedures used during the second nomination meeting. In these cases,

The Secretary's reliance on *Burch v. International Ass'n of Machinists and Aerospace Workers*, 337 F.Supp. 308 (S.D.Fla.1971), suffers from the same difficulty. In *Burch*, the chair of the nominations meeting recognized only a select group of members to nominate candidates and ignored others who wanted to be recognized. The court held that Mr. Burch and his supporters were denied the right to nominate candidates. While the proceeding in *Burch* closely parallels the second nomination meeting in this case, the union members in *Burch* were provided with only a single opportunity to nominate candidates, unlike the two provided here. Furthermore, *Burch* arose from a violation of § 101(a)(1), which guarantees members "equal rights and privileges" to nominate candidates.[1]

Neither Local 89 nor the Secretary have cited authority that directly supports their positions.[2] This Court is thus faced, as it was in *Brock*, with the tension between the two conflicting policies of Title IV, and no case law directly on point. *See* 762 F.2d at 1353. In that case, this Court considered the statutory language, legislative history, and administrative regulations when deciding the issue.

The statute itself requires that "a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office...." 29 U.S.C. § 481(e). The legislative history indicates that the purpose of Title IV of the LMRDA is to provide free and democratic elections. Further, as the Secretary notes, an underlying concern was preserving public confidence in the integrity of elections. The countervailing policy recognizes that unions should be free to conduct their affairs so far as possible and the government should not become excessively involved in union politics.

Finally, administrative regulations have established "Procedures for nomination:"

---

however, the procedures were uniformly applied across the electorate, with no exceptions. Here, all members were allowed to participate at the first nomination meeting, but only a few "select" members were allowed to participate in the second meeting.

(a) Since the Act does not prescribe particular procedures for the nomination of candidates, the labor organization is free to employ any method that will provide a reasonable opportunity for making nominations. There are various methods which, if properly and fairly employed, would be considered reasonable under the Act. For example, nominations may be by petition, or from the floor at a nomination meeting.

(b) Whether a particular procedure is sufficient to satisfy the requirements of the Act is a question which will depend upon the particular facts in each case. *While a particular procedure may not on its face violate the requirements of the Act, its application in a given instance may make nomination so difficult as to deny the members a reasonable opportunity.*

29 C.F.R. § 452.57 (emphasis added). Additionally, the "Qualifications for candidacy" reads, in relevant part:

A basic assumption underlying the concept of "free and democratic elections," is that voters will exercise common sense and good judgment in casting their ballots. In union elections as in political elections, the good judgment of the members in casting their votes should be the primary determinant of whether a candidate is qualified to hold office. *Therefore, restrictions placed on the right of members to be candidates must be closely scrutinized to determine whether they serve union purposes of such importance, in terms of protecting the union as an institution, as to justify subordinating the right of the individual member to seek office and the interest of the membership in a free, democratic choice of leaders.*

29 C.F.R. § 452.35 (emphasis added).

In this case, the parties agree that the first nomination meeting did not violate the LMRDA. The disqualification of six nominees is also not challenged. As to the nomination procedure of the second meeting, however, recognition by the incumbent presidential candidate became in effect a qualification for office. The chairman selected three people to nominate six candidates for three offices. These three people nominated a total of only three individuals, each for two offices, and one of the three nominated another. This, in light of the fact that other members wanted to nominate other candidates, clearly deprived rank-and-file members of an opportunity to nominate candidates and prevented members in good standing from becoming candidates.[3] In essence, by granting the incumbent president candidate sole authority to select those members who could make nominations during the second nomination meeting, the union effectively made selection by the incumbent candidate for president a qualification for office.

Even if we determine that the procedure utilized at the second nomination meeting violated the LMRDA, we still must address the issue of whether, since the first meeting allowed members a reasonable opportunity to nominate candidates, that fact moots any questions as to the second meeting. In resolving this issue, we find the purposes behind the second nomination proceeding illuminating. Local 89 explains the rationale behind the second nomination procedure:

[i]f the Judges of Election rule that one or more candidates is ineligible, the original expectations of the members regarding the number and identity of candidates for the particular office have not been realized. By providing an opportunity for further nominations limited to the number of disqualified candidates, the union restores to the members their option of voting *against* candidates who were not disqualified, and maintains the same number of nominees as

---

**3.** Burdens on non-incumbent candidates should be critically scrutinized "on account of the advantage that incumbents or committee-selectees naturally enjoy relative to rank-and-file members. Union officers are rarely unseated, and when such an upset does occur, it is generally one of the union hierarchy and not the rank-and-file member who takes the prize." *Donovan v. CSEA Local Union 1000*, 761 F.2d 870, 876 (2d Cir.1985).

While the facts given do not explicitly state that Ross was a non-incumbent, it seems a fair inference that he was. Further, both the chair of the nomination meeting and one of the members selected to make a nomination, Richard Scannel, were incumbents and candidates for re-election. Richard Scannel was subsequently re-elected.

the members chosen at the special nomination meeting. In order to protect the integrity and primacy of the special nomination meeting, the limited process of further nomination at the regular membership meeting supplements but does not supersede and replace the special nomination meeting.

Appellant's brief at 7. Precisely because the members' original expectations have not been realized, it is essential that the second nomination meeting provide the same level of democratic participation as the first.

Even though every member had an opportunity to nominate candidates at the first meeting, members must also be given a fair opportunity to nominate new candidates at the second meeting in a democratic manner. Any procedure that allows manipulation by the incumbents, as this second nomination procedure clearly did, taints the entire second proceeding. This, in turn, taints the entire election, because limiting to three new candidates for six offices those who were nominated at a meeting controlled by the incumbents necessarily upsets "the original expectations of the members." The procedures used during the second nomination meeting here may well have caused a result exactly opposite from the stated purpose of the further nomination procedure. In the instant case, for example, all the surviving nominees from the first meeting and none of the nominees from the second were elected.

The policy of reopening nominations is useful and desirable and not violative of the LMRDA. That is not to say, however, that the process cannot be abused. The warning of the administrative regulations—that "[w]hile a particular procedure may not on its face violate the requirements of the Act, its application in a given instance may make nominations so difficult as to deny the members a reasonable opportunity to nominate"—is applicable here. See 29 C.F.R.

§ 452.57(b). Limiting the number of nominees to the number of disqualified candidates does not, by itself, violate § 401(e). Here, however, several union members attempted to nominate Ross at the second nomination meeting, but the chair did not recognize any of them. Combined with the limitation on the number of nominees, the procedure denied the members a reasonable opportunity to nominate Ross and others and may well have advantaged the incumbents.

A second nomination meeting to permit further nominations when previous nominees are disqualified is, as indicated, obviously a desirable procedure if fairly conducted, particularly where, as here, the disqualification of some first meeting nominees leaves only one nominee for each office, and the first meeting becomes in effect the election. But if, as here, it is so controlled that only nominators recognized by an incumbent president are permitted to make nominations, it can become a sham as it may well have been here.[4]

B. *The Violation of Section 401(e) May Have Affected the Outcome of the Election.*

The LMRDA does not require the Secretary to show that a violation actually affected the outcome of an election, only that it may have.[5] If the Secretary proves a violation of § 401, a prima facie case is established that the violation may have affected the outcome of the election. *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 506, 88 S.Ct. 1743, 1751, 20 L.Ed.2d 763 (1968). Once the prima facie case is established, the burden shifts to the union to show that the violation had no effect on the outcome of the election. *Usery v. Stove, Furnace and Allied Appliance Workers Int'l Union*, 547 F.2d 1043, 1046 (8th Cir.1977).

---

4. Along with the district court, we do not comment on whether a more random procedure of selecting candidates would violate § 401, other than to say that a random method would reduce the possibility that selection by the chair was a qualification for office and might also eliminate the appearance of abuse.

5. Local 89 initially argues that the Secretary must demonstrate actual abuse. The Supreme Court, however, has held that the Secretary need not show that the violation "affected" the election, but merely "may have affected" the election, noting the difficulties involved in proving actual abuse. *Hotel Employees Union, Local 6*, 391 U.S. at 506–07, 88 S.Ct. at 1752.

Local 89 argues that the violation did not affect the outcome of the election because the eventual winning candidates all were those nominated during the first nomination meeting. As discussed in the previous section, however, the improper nominating procedures employed during the second meeting tainted the entire election. Union members were not given a fair opportunity to nominate candidates at the second meeting and therefore potential candidates for election were excluded from the ballot. Only persons who apparently were not serious candidates, since they were nominated for more than one office and each was nominated for the delegate position by an incumbent running for re-election to that position, were allowed to be nominated at the second nomination meeting. If even one of the excluded potential candidates had been nominated and on the ballot, the results of the election might have been different.

Local 89 also argues that a new election is unnecessary because the Secretary must utilize the union's constitution in conducting the new election and the union's constitution has been amended. The constitution now allows an election immediately after the initial nomination meeting if, after members have been disqualified, there are still enough candidates, even if only one per office, to fill the offices. Since sufficient candidates were nominated at the first meeting, Local 89 argues, under the new constitution the election must be conducted with only those names on the ballot and the election results would be exactly the same.

Local 89 cannot rely on its amended constitution to preclude a new election in this case. The nominating procedures used during the first election were unfair and violated § 401(e), and a new election is required to remedy that violation. The new provision in the amended constitution, even if valid, cannot be "invoked" after the fact to prevent new nominations in an open meeting and a new election to elect from among those nominated. Moreover, as discussed in Part C, *infra*, the Secretary is not bound by the amended procedure.

## C. The Secretary Is Not Bound By the Union's Amended Constitution When Supervising a New Election.

If a court finds that a violation of § 401 has occurred and this violation may have affected the outcome of the election, the "court shall declare the election, if any to be void" and the Secretary shall supervise a new election "so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." LMRDA § 402(c). Local 89 contends that the Secretary must follow the nomination procedures outlined in the union's amended constitution.

As was discussed in Part A, *supra*, the union's further-nomination procedure as conducted violated § 401(e) of the LMRDA. The new constitution retains the same further-nomination procedure, the only difference being the substantially more limited circumstances in which the procedure can be invoked. We do not reach the issue of whether the amended nomination procedure is violative of § 401(e) as this issue is not before us. The further-nomination procedure under the amended constitution, however, is identical to the original procedure and would violate § 401(e) if similarly applied to restrict nominations. The Secretary was not bound by this amended procedure, but instead was authorized to conduct the new election in a manner that complied with § 401 and conformed with those provisions of the union's constitution that were clearly lawful.

In supervising a new election, the Secretary must ensure that union members are given a fair opportunity to nominate new candidates. Thus, while the Secretary had the discretion to determine the details of the new election procedures, the Secretary could have followed the amended constitution only if the union members were given a fair opportunity to nominate candidates.

The union urges that during the supervised election, the first nomination meeting, which was held according to valid procedures, should not have been invalidated, but instead only the second meeting should have been invalidated. While we do not know which procedures the Secretary employed when conducting the July 8, 1992 election,

the Secretary was not obligated to invalidate only the results of the second nomination meeting. In fact, if the Secretary determined that the most practicable alternative was to accept as candidates those nominated at the first meeting, the union's amended constitution could not be invoked to preclude a second nomination meeting since this would deprive the union members of their opportunity to nominate new candidates. The Secretary, as previously indicated, had broad discretion in determining the procedure to be followed. As was discussed in Part B, *supra*, under no circumstances could the amended constitution be invoked to deny the union members an opportunity to nominate new candidates at an open meeting.

## CONCLUSION

The decision of the district court granting the Secretary's motion for summary judgment is AFFIRMED.