211 F.Supp.2d 1111 (2001)
Alexis M. HERMAN, Secretary of Labor, Plaintiff,
v.
LOCAL 50, SERVICE EMPLOYEES INTERNATIONAL UNION, Defendant.
Nos. 4:98-CV-2093 (CEJ), 4:99-CV-401 (CEJ).
United States District Court, E.D. Missouri, Eastern Division.
March 29, 2001.
*1112 Henry J. Fredericks, Asst. U.S. Attorney, Office of U.S. Attorney, St. Louis, MO, Michael A. Stabler, Henry L. Solano, *1113 John F. Depenbrock, Dennis A. Paquette, Brenda J. Stovall, Mary D. Wright, U.S. Department of Labor, Kansas City, MO, for plaintiff.
George O. Suggs, Michael T. Finneran, Wilburn and Suggs, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
JACKSON, Chief Judge.
This matter is before the Court upon the plaintiff's motion for summary judgment. See Fed.R.Civ.P. 56. The defendant has filed a response, and the matter is fully briefed.
Plaintiff, the Secretary of Labor, brings this action against Local 50, Service Employees International Union ("Local 50") pursuant to Title IV of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 481, et seq. The plaintiff challenges the nomination process and elections conducted by defendant with respect to the election of officers and divisional board members in July 1998 and October 1998, respectively.

I. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

II. FACTS

The defendant is a local labor organization with approximately 6,500 active members employed throughout Missouri and southern Illinois. The defendant represents employees of approximately 160 employers, some of whom have more than one bargaining unit. Ninety of the employers employ fewer than 20 members of Local 50. The Division of Public Employees has approximately 1,023 members who work at 22 different work sites.
The procedures for nominating and electing officers of Local 50 are set forth in the defendant's Constitution and Bylaws, as amended February 2, 1998. Specifically, Article V, Section 5.02 provides that nominations of officers are to take place at the regular membership meeting every three years. At least 15 days notice must be given of the time and place of the *1114 meeting and of the fact that nominations are to take place. Any challenges to the elections must be submitted in writing and sent by certified mail to the election committee. All election challenges are ruled on by the Executive Board.
In relevant part, Article V, Section 5.02 also provides:
Nominations of Officers shall be by written nominating petition provided by the Local Union. Said written nominating petitions will be available at the main Union Hall located at 2725 Clifton Avenue, Saint Louis, Missouri 63139, on Monday through Friday from 9:00 a.m. until 5:00 p.m. during the month of May, excluding holidays, of any election year. The nominating petitions shall be numbered and issued only to a candidate for office by the Recording Secretary or a person designated by the Recording Secretary. The candidate will sign a receipt provided by the Recording Secretary acknowledging receipt of said nominating petitions. The nominating petition shall designate the name of the person being nominated, the office for which he or she is nominated and must be signed by at least two hundred (200) current dues paying members. No more than twenty (20) such signatures shall be counted toward the number required from among the active members employed in any single bargaining unit. No member may be nominated for or elected to more than one (1) office in the Local Union. Every member in good standing shall be eligible to sign a nominating petition of one (1) candidate, but only one (1) for each open office. The candidate need not secure the signatures himself of herself but must, indicate his or her willingness to accept the nomination by presenting the nominating petition accompanied by a signed statement accepting the nomination to the Recording Secretary or the person designated by the Recording Secretary at the main Union Hall located at 2725 Clifton Avenue, Saint Louis, Missouri 63139. Petitions and statements of acceptance must be presented no later than 5:00 p.m. on the Friday preceding the nomination meeting by certified mail, return receipt requested, addressed to the Recording Secretary. The nominations for each office shall be conducted separately with the Recording Secretary submitting the candidates' names for that office who have secured the required number of valid signatures. Nominations for each office shall be closed prior to accepting nominations for the next office.
Prior to the February 1998 amendment, a nomination petition had to be signed by at least 200 members, without regard to their dues paying status or their bargaining unit affiliation. Thus, Article V, Section 5.02 of the defendant's Constitution and Bylaws, effective in 1994, provided in relevant part:
Nominations of officers shall be by written nominating petition, designating the name of the person nominated, the office for which he or she is nominated, and must be signed by at least 200 members. The candidate nominated need not secure the signatures himself, but must forty-eight (48) hours prior to the nominating meeting on the said petition indicate his willingness to become a candidate, and sign the said statement. Nominations must be presented to the presiding officer at the meeting or mailed by Registered Mail, Return-Receipt requested to the Recording Secretary, at least forty-eight (48) hours prior to the time of the membership meeting.
The procedures for nominating and electing Divisional Board members are also set forth in the defendant's Constitution and Bylaws, as amended February 2, *1115 1998. Pursuant to Article XIII, Section 13.07 Divisional Board members are nominated every three years at the regular general membership meeting in October. Notice of the time, place and purpose of the meeting (i.e., nominations) must be given 15 days in advance. See Article XIII, Section 13.08. Challenges to the election must be submitted in writing by certified mail to the election committee, and all such challenges are ruled on by the Executive Board. Id. In addition, Article XIII, Section 13.08 provides, in relevant part:
Nominations of Divisional Board members shall be by written nominating petition provided by the Local Union. Said written nominating petitions will be available at the main Union Hall located at 2725 Clifton Avenue, Saint Louis, Missouri 63139, on Monday through Friday from 9:00 a.m. until 5:00 p.m. during the month of August, excluding holidays, of any election year. The nominating petitions shall be numbered and issued only to a candidate for office by the Recording Secretary or a person designated by the Recording Secretary. The candidate will sign a receipt provided by the Recording Secretary acknowledging receipt of said nominating petitions. The nominating petition shall designate the name of the person being nominate, the office for which he or she is nominated and must be signed by at least fifty (50) (or 20% whichever is less) current dues paying members from the division in which the candidate is seeking office. No more than ten (10) such signatures shall be counted toward the number required from among the active members employed in any single bargaining unit. No member may be nominated for or elected to more than one (1) office in the Local Union. Every member in good standing shall be eligible to sign a nominating petition of one (1) candidate, but only one (1) for each open office. The candidate need not secure the signature himself or herself, but must, indicate his or her willingness to accept the nomination by presenting the nominating petition accompanied by a signed statement accepting the nomination to the Recording Secretary or the person designated by the Recording Secretary at the main Union Hall located at 2725 Clifton Avenue, Saint Louis, Missouri 63139. Petitions and statements of acceptance must be presented no later than 5:00 p.m. on the Friday preceding the nomination meeting or received by 5:00 p.m. on the Friday preceding the nomination meeting by certified mail, return receipt requested, addressed to the Recording Secretary. The nominations for each office shall be conducted separately with the Recording Secretary submitting the candidates' names for that office who have secured the required number of valid signatures. Nominations for each office shall be closed prior to accepting nominations for the next office.
No comparable procedure existed under the defendant's Constitution and Bylaws in effect before 1998.
In March 1998, the defendant mailed copies of its amended Constitution and Bylaws to its members. However, at least four members did not receive their copies. Union members Alma Jean Nelson, Sandra Love, and Alan Barker did not receive copies of the amended Constitution and Bylaws, although they had been at their same addresses for at least two years. Donald Rudd, the union's president, testified that approximately two hundred mailings of the Constitution and Bylaws were returned undelivered, and the defendant did not make any further attempt to provide notice of the amendments to those members. In 1998, the union did not have a procedure in place to keep the mailing *1116 list updated, although it had such a procedure at the time of Rudd's deposition.
On June 17, 1998, the defendant mailed a postcard nomination notice informing members of the July 6, 1998 nomination meeting for the election of officers. Members could not obtain nomination petitions for the 1998 election of officers, however, after May 31, 1998. At least four members also did not receive the postcard nomination notice. Union members Nelson and Love called the defendant's office in late June, 1998, to attempt to obtain nominating petitions, but they were told that it was too late. The defendant did not provide any notice of the date, time, and place of the nomination meeting for the October 1998 election of Divisional Board members. Members of Local 50 could not obtain nominating petitions for the October 1998 election after August 31, 1998.
Union member Amanda Curtis obtained nominating petitions for both the July 1998 election of officers and the October 1998 election of Divisional Board members. Curtis requested that the defendant provide her a list of the work site locations of the union's members. The defendant gave Curtis a list, but it contained names of employers who were on the inactive roster, listed some employers only by post office box numbers rather than by street address, and listed some employers by out-of-state addresses rather than local addresses. Sheila Powell, a business agent for the defendant and a member of the slate of incumbent officers, testified that the defendant maintained in its offices a list of all of the work sites and their addresses, as well as files containing business cards of the companies that employed union members.
The incumbent officers seeking nomination compiled separate stacks of petitions for each of the nine members of the slate. Business agents for the local then took the petitions for the members of the slate to the work sites that they serviced. Andy Stovall, a member of the incumbent slate, took petitions to St. Vincent's Home for Children, where he was a business agent, and distributed them to the shop stewards following their monthly meeting. Michael Murphy, another member of the incumbent slate, also took stacks of petitions to work sites for which he was the business agent. Powell took petitions to the locations for which she was the business agent, and gave the petitions to the shop stewards after completing the union business that she had come to do.
If a union member failed to include his or her social security number on an incumbent's petition, the incumbent would obtain that information from the union's computer system and enter it on the petition. This was not done for Amanda Curtis, but the union decided that social security numbers would not be required on her petitions.
Curtis collected sixty-seven valid signatures from six facilities, and thus was not eligible to be on the ballot for the election. The member of the incumbent slate with the fewest petition signatures was William Morris, with 618 valid signatures from thirty-seven facilities.
Curtis also sought nomination to the defendant's Executive Board in October 1998 as a representative of the Public Employees division. Curtis obtained sixteen valid signatures from three different bargaining units within the Public Employee division. Local 50 did not give Curtis information regarding the job sites where members of the Public Employees division worked. However, the incumbent Executive Board members obtained signatures with the assistance of Local 50 officers and business agents. The incumbent with the fewest signatures obtained fifty-seven valid *1117 signatures from six different bargaining units within the Public Employees division.

II. DISCUSSION

Section 401(e) of the LMRDA makes all union members in good standing eligible to run for office in the union's elections subject to "reasonable qualifications uniformly imposed." 20 U.S.C. § 481(e). The intent of Congress in enacting the LMRDA was to guarantee free and democratic union elections and, thus, to protect the rights of rank-and-file members to fully participate in the union. See Local 3489, United Steelworkers v. Usery, 429 U.S. 305, 309-10, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977).
If, after an investigation, the Secretary finds probable cause that a violation of § 481 has occurred, the Secretary must sue in federal court for an order annulling the challenged election and requiring a new election under the Secretary's supervision. 29 U.S.C. § 482(b). The Secretary must show a violation of § 481 and that the violation may have affected the outcome of the election. See Reich v. Local 89, Laborers' Int'l Union, 36 F.3d 1470, 1474 (9th Cir.1994). A complaining union member must first exhaust internal union remedies before invoking the aid of the Secretary. See 29 U.S.C. § 482(a); Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 467, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).
The defendant does not argue that the exhaustion requirement was not met, or that an alleged violation may have affected the outcome of the election. Thus, the Court will focus on whether the defendant violated § 481. One of the protections in the LMRDA is that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates." 29 U.S.C. § 481(e). The plaintiff argues that the defendant violated § 481(e) by failing to provide timely notice of the nomination procedures and by utilizing nomination procedures that were unduly burdensome. The regulations construing the statute regarding notice provide, in part, that:
[T]he labor organization must give timely notice reasonably calculated to inform all members of the offices to be filled in the election as well as the time, place, and form for submitting nominations.... In an election which is to be held by secret ballot, accordingly, notice of nominations may be given in any manner reasonably calculated to reach all members in good standing and in sufficient time to permit such members to nominate the candidates of their choice, so long as it is in accordance with the provisions of the labor organization's constitution and bylaws.
29 C.F.R. § 452.56(a). The regulations further provide that:
The requirement of a reasonable opportunity for the nomination of candidates has been met only when the members of a labor organization are fully informed of the proper method of making such nominations.
29 C.F.R. § 452.56(b).
With respect to the July 1998 election of officers, the defendant mailed the notice of the nomination meeting on June 17, 1998, more than two weeks after the deadline for obtaining nomination petitions. While the amended Constitution and Bylaws contained a provision setting forth the time period in which petitions could be obtained, it is evident that not all of the defendant's members received copies of these documents. Indeed, even though the defendant knew that as many a two hundred mailings of the amended Constitution and Bylaws had not been delivered, *1118 it did not post or distribute the documents at work sites or take any other measures to ensure that members were "fully informed of the proper method for making such nominations." See 29 C.F.R. 452.56(b); Donovan v. International Ass'n of Machinists, 622 F.Supp. 394, 396 (N.D.Ill.1985) (union cannot discharge notice obligation by setting forth all necessary information within bylaws and constitution); Reich v. District Lodge 720, International Association of Machinists & Aerospace Workers, 11 F.3d 1496, 1501-02 (9th Cir.1993) (union must make reasonable effort to keep mailing list current); Marshall v. Office & Professional Employees Union, Local 2, 505 F.Supp. 121, 123 (D.D.C.1981) (Act requires notice be sent to last know home address of each union member); Dole v. Local 492, Bakery, Confectionary & Tobacco Workers International Union, 114 Lab.Cas. 27,842, 27,844 (E.D.Pa.1989) (union violated § 401(e) when it failed to take steps to resend misaddressed packages).
The Court further finds that the notice was insufficient with respect to the defendant's October 1998 election of Divisional Board members. It is undisputed that the defendant did not mail, post or otherwise disseminate notice of the nomination meeting, even though such notice was required by the amended Constitution and Bylaws. As a result, the defendant failed to give its members reasonable opportunity to participate in the nomination process. Thus, the Court concludes that the defendant violated § 401(e) of the LMRDA as to both the July 1998 and October 1998 elections by failing to provide reasonable notice of the nomination procedures.
The plaintiff also argues that the defendant violated § 401(e) of the LMRDA by using unreasonably burdensome nominating procedures in conducting the elections. Any method of selecting candidates that unduly interferes with members' free choice of selection is unreasonable. See Donovan v. Local Union No. 120, Laborers' International Union, 683 F.2d 1095, 1102 (7th Cir.1982). The LMRDA strikes a balance between correcting abuses in union elections, and not straying from the federal policy of letting unions manage their internal affairs. See Wirtz, 389 U.S. at 470-71, 88 S.Ct. 643. The regulation construing this provision of the LMRDA provides that:
Whether a particular procedure is sufficient to satisfy the requirements of the Act is a question which will depend upon the particular facts in each case. While a particular procedure may not on its face violate the requirements of the Act, its application in a given instance may make nomination so difficult as to deny the members a reasonable opportunity to nominate.
29 C.F.R. § 452.57(b).
Petition requirements can be reasonable if they serve the legitimate union purpose of ensuring that candidates can marshal minimal support. See Donovan v. Chicago Truck Drivers, Helpers & Warehouse Workers (Independent) Union, 601 F.Supp. 352, 356 (N.D.Ill.1984). Whether a particular petition requirement is reasonable depends on the particular facts of the case. See Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, 761 F.2d 870, 876 (2d Cir.1985).
The plaintiff argues that the petition requirements in this case were unreasonable because candidates were required to use petitions provided by the union, and they could only obtain petitions by personally going to the Union Hall on Monday through Friday from 9:00 a.m. until 5:00 p.m. during the months of May (for officers) and August (for Divisional Board *1119 members). A candidate seeking nomination as an officer was required to obtain the signatures of at least 200 current dues paying members. Of that number, no more than 20 signatures could be obtained from any one bargaining unit, and members could sign the petition of only one candidate for each office. For the election of Divisional Board members, the candidate was required to obtain the signatures of at least 50 current dues paying members, of which no more than 10 signatures could be obtained from any one bargaining unit, and members could sign the petition of only one candidate for each office. The plaintiff argues that the petition requirements are unreasonable on their face, and as applied to challenger Amanda Curtis.
The Court finds that the signature requirements in themselves are not unduly burdensome. The 200-signature requirement for officers is equal to slightly more than 3% of the union's membership. The 50-signature requirement for Divisional Board candidacy is 4.9% of the division's membership. Requirements such as these ensure that candidates have minimal support to justify holding an election. They also ensure that the candidate is serious enough about the candidacy to put forth the effort to obtain enough signatures. See Chicago Truck Drivers, 601 F.Supp. at 356 (holding petition requirement of 3.8% not unduly burdensome). The requirement of no more than twenty signatures from each bargaining unit, or ten for Divisional Board members, ensures a broad base of support. The Court also finds that it is not unduly burdensome to require candidates to go the Union Hall personally to obtain petitions, given that they have a month in which to do so.
The evidence establishes that Curtis was not harmed by the requirement that social security numbers be included on the nomination petitions. In fact, that requirement was waived in her case and her signatures were not invalidated due to the lack of social security numbers. In any future elections, however, the requirement of social security numbers should be evenly applied, with equal access to such information by challengers should they be required. See 29 U.S.C. § 481(e) (qualifications must be uniformly imposed).
The plaintiff also argues that the defendant violated § 401(c) of the LMRDA by failing to provide job site information to challengers, while incumbents had access to such information. Section 401(c) provides that unions shall "refrain from discrimination in favor of or against any candidate with respect to the use of lists of members." 29 U.S.C. § 481(c). Such lists of members have been held to include lists of members' job sites. See Reich v. Local 396, International Brotherhood of Teamsters, 97 F.3d 1269, 1275-76 (9th Cir.1996). The evidence establishes that incumbents used employer information that the defendant did not provide to Amanda Curtis. See Local 396, 97 F.3d at 1273, 1275-76 (incumbents' knowledge of job site information gained through official position, whether or not in tangible list form, while denying challengers job site list, violates § 401(c)); Marshall v. Auto Workers, Local 953, 97 Lab. Cas. 18,140, 18,143 (S.D.Ind.1980) (incumbents who garner compilation of names of union members by reason of their administrative positions, must make them available to all bona fide candidates). The Court thus finds that the defendant has violated the anti-discrimination provision of § 401(c). In any future election, the defendant must provide potential candidates with the same information to which the incumbent members have access regarding the locations of employers, and any information they have regarding the number and status of union members at each site.
*1120 The plaintiff finally argues that the combination of all of the procedures used by the defendant violated the provision in § 401(c) requiring "[a]dequate safeguards to insure a fair election." 29 U.S.C. § 481(c). The Court has addressed the procedures separately under other provisions of the statute, and thus need not address whether this provision has been violated.
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion for summary judgment [Doc. # 23] is granted.
IT IS FURTHER ORDERED that within fifteen (15) days of the date of this Order plaintiff shall submit to the Court a proposed order voiding the July 1998 and October 1998 elections, and ordering new elections, under the Secretary's supervision, for positions as officers and Divisional Board members. The defendant shall have five (5) days thereafter in which to submit any objections to the proposed order.